769 P.2d 590

**John BALDWIN and Sylvia Baldwin, Plaintiffs–Respondents,**

**v.**

**Larry L. LEACH and Linda K. Leach, Defendants–Appellants.**

**No. 17051.**

Court of Appeals of Idaho.

Feb. 16, 1989.

Paul Larry Westberg, Westberg & McCabe, Boise, for defendants-appellants.

Steven K. Ricks, Boise, for plaintiffs-respondents.

## SUBSTITUTE OPINION

The Court's prior opinion dated January 5, 1989, is hereby withdrawn.

BURNETT, Judge.

This is an appeal by Larry and Linda Leach from a judgment directing them specifically to perform a contract for the benefit of John Baldwin and Sylvia Baldwin. The principal issues are whether the Baldwins were third party beneficiaries of the contract and whether the contract had been validly rescinded. We affirm the judgment.

The facts may be summarized briefly. In 1974, the Baldwins, the Leaches, and another married couple formed a corporation known as 5MM, Inc. The corporation operated the "Main and Fifth" grocery market in Boise. In 1980, the Baldwins withdrew from the business and entered into an agreement for the corporation to redeem their stock at a total price of $85,000.00. The money was paid through Idaho First National Bank, an escrow holder, in installments of $919.40 per month. In 1981, the Leaches also withdrew and—although the record is not clear—they apparently relinquished their stock. The corporation owed the Leaches approximately $75,000.00 for cash advanced at the time of their withdrawal.

After the withdrawal of the Baldwins and Leaches, the remaining officers and shareholders of the corporation transferred its real property to a partnership known as G–P Properties. Upon learning of this transfer, the Baldwins and Leaches filed separate lawsuits asserting that the corporation was indebted to them and seeking to have the transfer set aside as a fraudulent conveyance. This led to a series of negotiations among all the interested parties. At the conclusion of these negotiations the lawsuits were dropped, the corporation's real property was transferred to the Leaches in satisfaction of the debt owed to them, and the corporation agreed to lease certain personal property to the Leaches. The lease instrument also contained an assignment to the Baldwins of the corporation's right to $919.40 from each rental payment. Thus, the assignment was equal to the installments of $919.40 per month which the Baldwins formerly had been receiving under the redemption agreement. The Baldwins gave notice of this assignment to potential creditors or other interested parties by filing a UCC–1 form with the Ada County Recorder.

The Leaches made the assigned payments, which were directed to the Baldwins' escrow account, for about a year and a half. At that time the corporation and Mr. Leach executed an "addendum" to the lease, transferring ownership of the leased property from the corporation to the Leaches. Consequently, the Leaches owned outright the real and personal property that once had belonged to the corporation. The corporation subsequently was dissolved. Although the Leaches were no longer leasing from the corporation, they continued for some time to make monthly payments of $919.40 to the escrow holder.

This practice ceased in December, 1985. Only a half payment was made that month and no payments followed. The Baldwins filed this lawsuit, demanding payment under the lease and contending that the Leaches had assumed the debt originally owed to them by the corporation. Mr. Leach and the defunct corporation then "rescinded" the lease. In response, the Baldwins amended their complaint, asserting that they were third party beneficiaries of the lease and that the lease could not be rescinded in derogation of their rights. The trial court agreed, ordering the Leach-

es to pay the past-due installments and to make future payments as they came due.

■ On appeal the Leaches have argued that the Baldwins were not third party beneficiaries but were merely creditors with a security interest in the lease payments. This argument presents a mixed issue of fact and law. We will not disturb the judge's findings of fact made upon substantial evidence. *Rasmussen v. Martin*, 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). However, when applying the law of third party beneficiary relationships to the facts in this case, we will exercise free review. *Harding v. Home Investment and Savings Co.*, 49 Idaho 64, 286 P. 920, *reh'g denied*, 49 Idaho 75, 297 P. 1101 (1930); *City of Burley v. McCaslin Lumber Co.*, 107 Idaho 906, 693 P.2d 1108 (Ct.App.1984); *Standards of Appellate Review in State and Federal Courts*, IDAHO APPELLATE HANDBOOK § 3.2.2. (Idaho Law Foundation, Inc. 1985) (hereafter cited as *Standards*).

■ Under Idaho law, if a party can demonstrate that a contract was made expressly for his benefit, he may enforce that contract, at any time prior to rescission, as a third party beneficiary. *See* I.C. § 29–102. The test for determining a party's status as a third party beneficiary, capable of properly invoking the protection of I.C. § 29–102, is whether the transaction reflects an intent to benefit the party. *Stewart v. Arrington Construction Co.*, 92 Idaho 526, 532, 446 P.2d 895, 901 (1968). The party must show that the contract was made for his direct benefit and that he is not merely an incidental beneficiary. *Adkison Corp. v. American Bldg., Co.*, 107 Idaho 406, 409, 690 P.2d 341, 344 (1984).

■ Here, the district court noted that the lease was a product of multi-party negotiations resulting, in part, from the Baldwins' suit alleging a fraudulent conveyance. The court further noted that the lease contained the assignment of payments to the Baldwins, and that the lease required the Leaches to continue making payments even if the corporation failed to do so. Accordingly, the court determined that although the lease contained some ref-

erences to the Baldwins as secured parties, the transaction was intended to benefit the Baldwins directly. We hold that the district court properly applied the law to the facts in concluding the Baldwins were third party beneficiaries.

The Leaches next contend that even if the Baldwins were third party beneficiaries, their claim was defeated by rescission of the lease. As noted above, Idaho Code § 29–102 provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him any time *before* the parties thereto rescind." (Emphasis added.) The Leaches argue that the Baldwins cannot avail themselves of the protection of the statute because they did not allege in this suit any claim based on third party beneficiary status until the lease had been rescinded.

■ The district judge rejected this argument, ruling that the corporation could not rescind a contract after it had been dissolved. However, Idaho Code § 30–1–105 provides in pertinent part as follows:

> The dissolution of a corporation ... shall not take away or impair any remedy available to ... such corporation ... for any right or claim existing or any liability incurred prior to such dissolution if action or other proceeding thereon is commenced within two (2) years after the date of dissolution.... The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim....

In our view, this statute preserved the corporation's power to rescind the contract. Nevertheless, we believe the judge's decision can be upheld upon other legal grounds. It is axiomatic that "a decision reaching a correct result despite application of an erroneous legal theory will be upheld on appeal by applying the correct theory." *Standards* at § 3.5.2.1.

■ It has long been held that after a contract for the benefit of a third person has been accepted or acted upon by that person, it cannot be rescinded without his

consent. *See, e.g.,* RESTATEMENT (SEC-OND) OF CONTRACTS § 311 (1981); 17A C.J.S. *Contracts* § 390 (1963). States with statutes identical to I.C. § 29–102 have continued to apply this doctrine. For example, California and Oklahoma have statutes providing that third party beneficiaries may sue to enforce nonrescinded contracts. *See* CAL.CIV.CODE, § 1559 and OKLA.STAT., tit. 15, § 29. These statutes have been interpreted to leave untouched the doctrine that after acceptance or reliance, a third party beneficiary contract cannot be unilaterally rescinded. *See, e.g., Dick v. Woolson,* 106 Cal.App.2d 415, 235 P.2d 119, 122 (1951); and *Plunkett v. Atkins,* 371 P.2d 727, 732 (Okla.1962). We concur with this line of decisions. In doing so, we do not disregard I.C. § 29–102; rather, we simply hold that its reference to rescission logically extends only to a valid rescission.

In the case at hand, the Baldwins arguably accepted *and* relied upon their rights under the lease. However, we need only discuss their acceptance. The Baldwins manifested such acceptance by recording the UCC–1 financing statement, giving notice of their right to the assigned lease payments. Thereafter, they received and retained such payments for nearly two years. Finally, they filed this suit to enforce the lease when the monthly payments ceased. We hold, upon these undisputed facts, that the Baldwins accepted the contract. Accordingly, we conclude that the rescission was invalid and that the Baldwins were entitled to enforce the lease.

The district court's judgment is affirmed. Costs, together with attorney fees under the lease agreement, to the Baldwins.

WALTERS, C.J., and SWANSTROM, J., concur.